EDWARD W. KELLY *vs.* ELLEN M. McDONALD.

Suffolk.   January 12, 13, 1897. — February 25, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Replevin — Title — Burden of Proof — Law and Fact.*

In an action of replevin, the burden is on the plaintiff to establish his title to the property replevied, and if he introduces evidence tending to show that he acquired by purchase the title of a lessor of the property, and there are also circumstances in evidence which are consistent with the theory of the defendant, who was a mortgagee of the property subject to the lease, that the payment made by the plaintiff to the lessor was in the interest of the lessee, it is for the jury to say whether the plaintiff has sustained the burden of proof.

REPLEVIN of certain articles of household furniture. Trial in the Superior Court, before *Dunbar*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that the defendant, on or about June 26, 1891, acquired possession of a portion of the property replevied from Plimpton and Company, and of the remainder from Keeler and Company, furniture dealers, under "leases" so called made on that date; that at the date of the writ, May 29, 1894, there remained a balance overdue and unpaid of $67.20 upon the lease from Plimpton and Company, and of $43.49 upon that from Keeler and Company; that at and after the date of the leases the defendant was in possession of a

rented house, No. 72 Rutland Street, Boston, in which she was accustomed to let furnished rooms ; that on or about November 2, 1892, the defendant, with the consent of the lessors, transferred her interest in and possession of the furniture, including that covered by the leases, to Helen M. Banks, for $1,800, of which Banks paid $500 in cash at the time; and that Banks at the same time received a transfer of the two leases then existing, with the consent of the lessors, and as a part of the $1,800 assumed and agreed to pay the unpaid instalments under the leases.

It also appeared that Banks further gave to the defendant a mortgage of $584.48 upon all the furniture so purchased, but " subject to said leases," in which Banks covenanted that the goods were free from all encumbrances " except leases amounting to $715.16 "; that after the transfers to Banks and the recording of the mortgage Keeler and Company made to her a new lease of the property described in the lease from that firm in substitution for the lease which had been assigned to her by the defendant; and that shortly before April 30, 1894, Banks having failed to pay certain instalments due under the leases, the lessors were threatening to retake possession of the leased furniture.

George W. Basford, a witness for the plaintiff, testified that he was cashier for Keeler and Company ; that on April 30, Byron E. Noble and another man came to Keeler and Company's store ; that an inquiry was made by Noble as to how much was due upon the lease to Banks, and then requested that a bill of sale should be made out to him ; that he had received the day before a letter from Banks, dated April 29, 1894, addressed to Keeler and Company, and containing the following: " In regard to the lease on furniture at my house, 72 Rutland St., will say that I have a party who will pay up the balance of the lease to-morrow, April 30, and would like to know if I will have to sign any paper "; and that, instead of transferring the lease to Banks, he transferred it, as he understood it, at Banks's request, or with her sanction, to Noble, and upon his paying the balance, $43.49, he gave him a receipted bill of parcels of the goods.

On cross-examination, he testified that the two men called

again, asked to see the above mentioned letter, and took it away with them.

Ellen M. Banks, a witness for the plaintiff, testified to purchasing the furniture in the house No. 72 Rutland Street from the defendant, and to the terms of the purchase; that she continued to occupy the place up to some time in May, 1894, but was unable to make payments very regularly after the first; that she occupied the house under a lease from the owner; that in May the defendant entered the house and took possession under the mortgage for breach of the conditions thereof, of all the furniture except a portion not included therein, first giving the necessary legal notice of her intention to do so to the witness; that afterwards the leased goods, which were all included in the mortgage, were replevied on the writ in this action from the defendant while she was so in possession, but after notice of Noble's claim of title; that she wrote the letter of April 29, but at that time had no definite knowledge that any arrangement had been made by her brother, with whom she had left the matter, in reference to paying off these leases, and did not know that he had seen Noble about the matter; that she first knew on April 30 that Noble had had his attention drawn to it; that she did not know anything about the transfer to Noble, and had no dealings or communications with him; that the first she knew was the bringing of a paper transferring her interest to Noble for her to sign; that the fact that a bill of parcels had been given Noble by Keeler and Company and Plimpton and Company was then first called to her attention; that no money was loaned her by Noble, nor was it at any time called to her mind that she was a debtor to Noble for any loan, or that Noble in this way had been making her a present of money; and that she was not requested to give a note or any other obligation to Noble.

On cross-examination, she was asked if it was called to her attention that Noble went, as she said without her knowledge, to two furniture dealers and bought up, without her knowledge, leases, one for $43 and the other for $67, and attempted to take possession of property worth a great deal more; to which she replied, "I left the matter to my brother; I did not have anything to do with it."

Frederic S. Banks, a witness for the plaintiff, testified that he was a brother of Ellen M. Banks; that he acted "simply as a brother trying to help her out up at the house"; that he made application to Noble in regard to this matter, because the furniture people threatened to take away the furniture if the amounts due were not paid; that he asked Noble if he could "loan some money on those leases," and Noble said he should want to see whether his title would be good; that he "then asked Noble if, in case he found the title was good, he would not lend the money, he would buy" a part or the whole of the furniture; that afterwards they went to Mr. Prince, a lawyer, to find out, if Noble bought the goods, whether he would have a clear title to them or not; that up to the time his sister wrote the above letter he had not made any actual arrangement with Noble such as is there stated; that at that time he notified his sister that he would "endeavor to make some arrangement to take care of the furniture in some way, either to get the money or to have somebody buy it up that would hold it and· be friendly to us, and I notified her to tell the furniture people that there would be somebody around on Monday, I think it was, to buy the furniture"; that he was present at the interview between Noble and Mr. Prince, and an arrangement was made that Noble should take the furniture "over into his own name"; that after that he went with Noble to the lessors, and Noble said he wanted the furniture made out in his own name, and he asked if they had a clear right to the furniture, and was told that·they could take the furniture away, as the monthly payments on the leases had not been kept up, and they had a clear title to it; that Noble asked if, by his getting a bill of sale of it, he would have a clear title to it, and they told him "Yes"; that in these transactions there was no loan to him, either directly or as the agent of his sister, and no promise. to pay Noble, or note given him or anything said about his being a creditor to that amount; and that, when the property was replevied, he went with the officer at his request to identify it.

On cross-examination, the witness testified that the plaintiff was a man who was "in the business of taking furniture out of houses," and the bill of sale which was given to him by Noble was for the purpose of enabling him to go up and take that

property; and that the only consideration was a dollar paid by the plaintiff, which the witness believed he saw passed.

Byron E. Noble, a witness for the plaintiff, testified that Banks came to him as a friend, and first wanted him to lend him the money in order to pay up the leases; that, not wanting to put out any money unless he had some security, he went with Banks to consult Mr. Prince; that, in consequence of the advice that Mr. Prince gave to him, that arrangement was not carried out, but in place of that a plan was substituted by which he should have a perfect right to the furniture in his name through buying up the rights of the lessors, and accordingly he went to those firms and asked if that could be done, and was told that it could; that he paid the balances due, and received bills of parcels of the leased goods; and that, about three weeks later, having understood that the defendant was about to foreclose the mortgage, and not having the time to attend to getting hold of the property, he gave a bill of sale to the plaintiff, of whom he heard through Mr. Prince, for the purpose of obtaining possession of the property.

On cross-examination, he testified that Banks told him of the defendant's mortgage, and that these leases were not included in the mortgage; that Banks told him that he could get the legal title, and that it would be all right; and that he doubted that, and in consequence went to see Mr. Prince. The bills of parcels from the lessors to Noble were put in evidence.

James P. Prince, an attorney at law, called by the plaintiff, corroborated the witnesses Banks and Noble as to the details of their interview with him.

The defendant testified that she furnished her attorney, Mr. Silsby, with $110 to tender to Noble on account of the amount due on the leases; that Mr. Silsby knew that the leases were outstanding, and that she let him do the whole work of taking possession; that keepers were put in possession of the leased furniture, as well as of the other furniture that had been mortgaged to her; and that she understood that Noble had paid this money, and stood practically in the place of the lessors, and so she made the same offer that she would have made to them.

Joseph P. Silsby, a witness for the defendant, testified that he

was an attorney at law; that the defendant placed the mortgage in his hands for foreclosure; that he caused possession to be taken of the mortgaged furniture; and that Noble called at his office in response to a letter, and the witness asked him if he had purchased or obtained his leases of the lessors, and he told him that he had.

On cross-examination, the witness testified that he found out from the defendant about what was due on the leases, and after that he knew that the mortgage was made subject to the leases; and that he knew that any attempt on the part of Miss Banks to mortgage the leased property would result in the immediate accruing of the rights of the lessors to take the property.

It was not contended by the plaintiff, nor was there any evidence introduced to show, that the lessors had taken possession of the leased property, or that they had given to Miss Banks or to the defendant any legal notice of their intention to take such possession for non-payment of the amounts due upon the leases. The plaintiff did not appear personally at the trial.

At the close of the evidence, the plaintiff asked the judge to rule, among other things, "that the plaintiff, upon the whole evidence, is entitled to a verdict; that there is no evidence to warrant a finding that the full amount due on said leases from the defendant or Miss Banks was ever paid; that the title to the leased property passed to Noble, free from the contracts of Plimpton and Company and Keeler and Company."

The judge declined so to rule; and the plaintiff excepted.

The case was submitted to the jury, against the plaintiff's objection, to find whether Noble actually purchased the rights of the lessors to the leased property, or the transaction was in effect a payment, in Miss Banks's interest, of the sums which she was under obligation to pay, and the jury were instructed that, if they found the transaction to be a purchase, their verdict should be for the plaintiff, but if they found the transaction to be merely a payment in Miss Banks's interest, they should find for the defendant.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*S. H. Tyng*, (*J. P. Prince* with him,) for the plaintiff.

*E. C. Gilman*, for the defendant.

KNOWLTON, J. If the jury believed the testimony relied on by the plaintiff to be literally true, he was entitled to a verdict. But they might disbelieve any part of it. The burden was on the plaintiff to establish his title, and if any essential fact relied on by him was not proved to the satisfaction of the jury, it was their duty to return a verdict for the defendant.

The plaintiff did not personally appear at the trial. He took his title from one Noble for a nominal consideration of one dollar, because he made a business of taking property on foreclosure of leases, and it was convenient for Noble to have him act in his behalf. The real question is whether, upon the testimony and the papers introduced in evidence, the jury were bound to believe that Noble acquired the rights and titles of the original owners and lessors of the property. The papers purported to give him these rights and titles. But up to the time of the alleged transfers it was the duty of Miss Banks to pay the balance due under the leases, and the defendant contended that the final payments were made in her behalf with money furnished by Noble as a loan to her, and that the transfers were merely attempts to give him security for his loan. The reported testimony tends strongly to show that whatever the real transactions were, he was acting from first to last mainly in her interest, and at her request presented through her brother. Her brother first went to a lawyer to see what could be done in her interest, and Noble afterwards went with her brother to the same lawyer, and consulted him before paying the money, and acted under his advice in making the conveyance to the plaintiff for the purpose of having this suit brought. The testimony was that, in giving the money to the lessors and taking the title he acted at her brother's request, and that the original talk between them was in regard to his making a loan and taking security. On the day before he took the transfer Miss Banks wrote to one of the lessors a letter stating, " In regard to the lease on furniture at my house, 72 Rutland Street, will say that I have a party who will pay up the balance of the lease to-morrow, April 30, and would like to know if I will have to sign any paper."

On one occasion, after paying the money and taking the transfer, Noble and her brother called on Keeler and Company,

asked to see this letter, and took it away. She testified that the first she knew of the transfer to Noble was on April 30, when a paper transferring all her interest to him was brought to her to sign. The evidence tended to show that the amount paid by Noble was but a small part of the value of the property.

We are of opinion that the presiding justice could not say, as matter of law, that the jury were bound to believe that the transactions on which Noble relied were in fact, as between him and Miss Banks, what on paper they purported to be. There were circumstances which were consistent with the defendant's theory that the payments by Noble to the lessors were made as Miss Banks's agent from money lent to her, and that the attempt to preserve the original titles of the lessors and their rights to take possession of the property was ineffectual as against the defendant, who held a mortgage from her. It was for the jury to say whether the plaintiff had sustained the burden of proof.

*Exceptions overruled.*